## No. 11,046.

### RICHARD L. ROBERTSON VS. CITY OF NEW ORLEANS.

1. Capital invested to be habitually used and primarily intended to be used for a particular purpose not giving exemption from taxation can not become exempt by reason of its being occasionally, exceptionally and accidentally used for another.
2. Dry docks are not constructed for the purpose of building, but of repairing boats.
3. Exemption laws are strictly construed.

APPEAL from the Civil District Court for the Parish of Orleans. *King, J.*

---

*T. M. Gill* for Plaintiff and Appellant.

---

*E. A. O'Sullivan*, City Attorney, for Defendant and Appellee.

---

The opinion of the court was delivered by

NICHOLLS, C. J. Plaintiff enjoined the city treasurer from selling his dry docks to satisfy a claim thereon for taxes.

He alleges that he is a mechanic engaged in the manufacture of articles of wood; building boats, and making the necessary apparatus and ornaments therefor, and the docks are not only absolutely necessary, but constantly employed in carrying on his business, in which he has more than five men employed. He alleges that by Art. 207 of the Constitution the docks are exempt from taxation.

The defendant pleaded a general denial, and prayed that the suit be dismissed and the injunction dissolved, with damages.

The court rendered judgment in favor of the defendant, dissolving the injunction and rejecting plaintiff's demands, and he has appealed.

Plaintiff relies upon his own testimony, that of A. L. McBride, his book-keeper, and that of Louis A. Himel, his foreman.

The latter testified that the number of persons employed by the plaintiff averaged from fifteen to twenty a day; that he was engaged in the "dry dock" business; that that business embraced the repairing and building of boats; that the docks are used in that business; that plaintiff manufactures different pieces of material for these different boats for repairs and for building; that he manufactured nothing else—that, of course, he put up chains and iron work that was necessary to keep the boat together; that he made all the woodwork and ornaments for boats; that the docks are absolutely necessary for the conducting of plaintiff's business; that plaintiff repaired steamboats and also ships there; that plaintiff did not build any boat on these docks in 1891, but that he had rebuilt some; that he was rebuilding a boat at the time of giving his testimony (1892) and had then out estimates for building of boats not yet heard from; that the boats which had been rebuilt, and that then rebuilding, were rebuilt on the docks; that rebuilding consists in taking pretty much all the frames out of the boat and replacing them with new, virtually making a new boat when it is rebuilt.

McBride testified that plaintiff's business consisted in repairing and rebuilding—building anything in the line of mechanic work that applies to steamboats or steamships; that there were then outstanding contracts or offers or bids for building boats; that plaintiff was engaged generally in the business of boat building—building and repairing boats; that there were no boats built, but several rebuilt, in 1891; that he never knew of any boat being built brand new in the docks; there were several rebuilt in 1891—one was the Hibernia; she was virtually made new; that it was his impression that there was none of the frame work of the old Hibernia left.

Plaintiff himself testified that he used the docks for building and repairing boats, vessels of all classes and descriptions; that they were absolutely necessary for conducting his business; that they are constantly used by him in that business; that he manufactures boats

Robertson vs. City.

of all classes and kinds, or at least he builds them; that he will build anything, from a skiff to a seventy-four gun frigate; that he furnishes everything that is to be built; that last year he took a steamboat called the Hibernia—she was so rotten she could not hold herself together—and he took out every floor and everything and put in brand new deck overhead and everything else; that at the time of giving his testimony he was doing the same thing with the Charles D. Sholas, of Natchez; that he is constantly called on to make bids for building boats, as well for the United States government as for private individuals; that he had a bid standing for seventeen barges. for the United States government and three barges for Mexico; that the docks are two large floating bodies—floating vessels—they are called tanks. That the docks are used for boat building and repairing, used for both; that he built entirely a boat by the name of the Hibernia; that the only part of the old part of the Hibernia left in the new boat was the stern, worth about $50, no iron work left, he took everything out; that he did not build new any boat in 1891; that he bid on several, but lost them, as his bids were too high; he bid to build boats or repair hulls, as the case might be.

In deciding the case the district judge used the following language:

"The evidence satisfies me that the dry docks in this case were not used during the year 1891 in boat building.

"The court is satisfied that if so used in boat building, they would be exempt from taxation; but it can not extend the article which exempts property used in boat building to mean to exempt articles used in boat repairing."

In his brief counsel says: "The theory of the judge is, that if the plaintiff should not make money, he should pay his taxes; and that if he did make money, he should not pay them." And in his argument he maintains that the evidence discloses the fact that two boats have been entirely rebuilt upon the docks, and that the latter are essential in the business of boat building, "for should a boat when launched be found to be defective in its construction it would of necessity have to be placed in dock as a condition precedent to its delivery."

Plaintiff entirely misapprehends the ground upon which this case was decided in the lower court. The evidence showed that whilst plaintiff was engaged in "building" boats, he was also extensively

engaged in "repairing" them. The court was evidently of the opinion that the money and capital expended in the docks were so expended for the construction or purchase of property to be habitually used for "repairing" and only to be exceptionally employed, if at all, in "boat building," and therefore if exemption was allowed at all, it could only be claimed under Art. 207 of the Constitution in a year in which it had been shown to have been so exceptionally used and employed.

The judge nowhere intimates that if the docks had been constructed or purchased for the purpose of "boat building" and were essentially necessary in that business—that if the plaintiff having invested his capital for boat building stood prepared in any given year to build boats, and only failed to do so for the reason that no contracts were called for or no bids were awarded him, the docks would not have been exempt. Had he so held he would have been in error, for plaintiff's case under such a condition of things would have fallen squarely under the principle announced by us in Waterbury vs. Atlas Steam Cordage Co., 43 An. 723.

We are of the opinion that capital invested to be habitually used and primarily intended to be used for a particular purpose not exempted, does not become exempt by reason of its being occasionally, exceptionally and accidentally used for another. Docks are not constructed for the purpose of building, but of repairing boats. The particular fact brought out in the testimony that the Hibernia had been entirely rebuilt, and the Sholas was at the time of the trial being entirely rebuilt upon the docks, leaves undeniable the fact that when they were placed in the dock they had already been built, and were placed there as existing boats.

The circumstance that when being in the dock, as the necessity for greater and greater repairs developed as they were being partially dismantled, it became possible to make these repairs so progressively, as that ultimately they left the docks "virtually new boats," as declared, does not alter the fact that the Hibernia and the Sholas were not placed there to be "built."

Had the owners contemplated the extent of the repairs necessary to be made upon them, it is very fair to presume they would have replaced them by boats built in the usual way on land upon the stocks. The accidental fact that a boat after having been launched should be ascertained to have some unknown and unforeseen defect, requiring

her to be placed in dock, does not give to the work done after that time the character of "building, but of repairing."

Whilst we recognize the great value and importance in a commercial community of the business in which plaintiff is engaged in repairing boats, we are powerless to deal with the question before us from that standpoint. We are only authorized to declare property exempt from taxation when we find the exemption covered by the terms of the article of the Constitution. Where the law makes no distinction the courts can not—it is certainly not less true that they are not permitted to [disregard distinctions which the Constitution itself has thought proper to draw. Exemption laws are strictly construed.

We can but affirm the judgment—judgment affirmed.